In re Petition of Renee Marie BROWN for Review of the State Board of Law Examiners Decision.

No. C4–90–1380.

Supreme Court of Minnesota.

April 12, 1991.

Jack S. Nordby, Meshbesher, Singer & Spence, Minneapolis, for appellant.

Eric J. Magnuson, Janette K. Brimmer, Minneapolis, for respondent.

## PER CURIAM.

Petitioner-applicant appeals from a decision of the State Board of Law Examiners recommending she not be admitted to the bar because she did not possess the requisite character and fitness. We affirm.

Applicant Renee Marie Brown graduated from law school in 1988 and that summer passed the state bar examination. In October of that year, however, the Board notified her it had tentatively decided not to recommend her admission. This determination was based on an investigation resulting from an answer given by applicant on her application form in which she said she had been arrested and charged with arson. Applicant appealed this initial ruling and a formal Board hearing was held on August 25, 1989.

At the hearing it was shown that on June 22, 1985, in Des Moines, Iowa, applicant had been arrested for setting a fire at the radio station where she was then employed; that a year later, on July 21, 1986, she pled guilty to second degree arson for the setting of the fire; and that she then received a deferred sentence (4 years probation with expungement of the conviction on successful completion of the probation). As part of her sentence, applicant made restitution of $2,300, completed 300 hours of community service, and underwent psychiatric evaluation and counseling.

Applicant testified at the Board hearing but called no other witnesses. She testified she had not set the fire and was innocent of the offense to which she had pled guilty. Appellant explained that she worked nights at the radio station as an on-air personality and she told about the events on the evening of the fire. She suggested two possible suspects for setting the fire.

Why plead guilty if one were innocent? In response to this question, applicant explained that the prosecutor had offered a deferred sentence with expungement of the criminal record on completion of probation; that while her attorney had felt she should probably be acquitted, the attorney also advised there was a risk she would not be; and that, weighing these two alternatives, she felt undertaking the risk of trial was "not a gamble I was willing to risk." At the time of her plea, applicant was 21 years old.

The transcript of the July 21, 1986, court hearing shows the judge carefully questioned applicant about the factual basis for her plea. Applicant admitted that she had indeed set the fire, using gasoline; that she had been fully advised of her rights and had not been coerced; and that she was guilty of the crime charged. Prior to her arrest, applicant had been accepted for admission to law school. At the time of her plea a year later, applicant had completed her first year of law school. (Apparently the law school does not inquire into criminal records of student applicants and applicant saw no need to disclose her record.)

The Board called as a witness a Des Moines police officer (whose name coincidentally was Brown also), who was one of the two police officers who had the radio station under surveillance the night of the arson and was the arresting officer. Officer Brown testified that applicant had been represented in the criminal proceedings by competent defense counsel ("one of the top defense attorneys in Polk County"), and, without objection, the officer said it was his opinion that Renee Brown had set the fire for which she was charged.

In its written decision, the Board concluded that applicant had committed the arson for which she was convicted and that she later lied under oath to the Board when she denied her guilt. The Board found that applicant's misconduct, based on reliable

evidence, was serious, recent, and continuing, and that applicant's denial of her guilt precluded a finding of rehabilitation. The Board concluded the application for admission should be denied.

At the time of the Board hearing, Officer Brown happened to mention two other incidents involving applicant occurring prior to the fire. Following the hearing, these matters were investigated by the Board, and, by agreement of the parties, the hearing record was then supplemented by a witness deposition and by certain records of the Polk County Sheriff's Department. On the basis of this supplementary record, the Board further found that from December 4, 1982, until April 14, 1983, applicant had been employed at a different Des Moines radio station; that during this employment she had reported two incidents to the Sheriff's Department alleging that people were harassing and attacking her while she was working at the station at night; that the officers who investigated these two incidents had concluded applicant's allegations were false; and that as a result of these two incidents applicant's employment at the radio station was terminated. The Board further noted that applicant had failed to disclose this job termination on her bar application form.[1]

■ An applicant for admission to practice law in the State of Minnesota must establish good character and fitness to the satisfaction of the Board of Law Examiners. Minnesota Rules of the Supreme Court for Admission to the Bar, Rule II A(2). To facilitate this determination, the Board, on September 20, 1988, adopted Character and Fitness Standards of Admission to the Bar. Some ten types of conduct indicative of unfitness and lack of good character are listed plus ten factors to consider in weighing the significance of the misconduct. These standards are also set out in *In re Zbiegien*, 433 N.W.2d 871 (Minn.1988). The burden of establishing good moral character is on the applicant. *In re Haukebo*, 352 N.W.2d 752, 754 (Minn.

1984). While we will independently review the Board's decision, we recognize the Board sees and hears the witnesses and is in a better position to decide credibility, and "[o]nly with great reluctance do we come to a conclusion other than that which the Board recommends." *Zbiegien*, 433 N.W.2d at 874.

■ We cannot say that the Board erred in finding that applicant had not sustained her burden of proving good moral character. Because there had been fires at the radio station on the two evenings preceding June 22, the police, without the knowledge of the employees, had the station under surveillance, one officer outside the station and the other inside. Only applicant and one other employee were present in the building and the officers did not see any other person enter or exit. The inside officer reported Ms. Brown had gone to the restroom with plastic cups, and, soon after she returned to her post, the fire broke out. In the investigation that immediately followed, Ms. Brown called the officer's attention to a gasoline can in a wastebasket under a counter in the restroom. It was the officer's opinion that Ms. Brown could not have seen the gas can in the wastebasket and yet she knew it was there. The plastic cups, it was determined, had contained gasoline and had Ms. Brown's fingerprints on them. While applicant offered a different interpretation of this circumstantial evidence, we cannot say that the Board erred in finding the evidence pointed to applicant's involvement with the fire. In addition, of course, there was the admission of guilt at the time of the plea. Also, the two troubling incidents of falsely reported crimes which preceded the arson incident were not conducive to applicant's credibility, and they were found by the Board to be serious misconduct by themselves.

By testifying before the Board that she was not guilty of the arson charge, applicant found herself in a difficult position.

1. Technically, as applicant points out, she did not have to disclose her employment at the first radio station. The bar application form requires that the applicant list employment "held within the last five years." Applicant was terminated by the first radio station on April 14, 1983. Her bar application was dated April 14, 1988, one day outside the last five years.

In effect, she undertook the burden of proving her innocence of the arson, which also necessitated an acceptable explanation of why she had then lied to the Iowa court by pleading guilty. From our review of the record, it appears that the Board focussed its inquiry not so much on applicant's logical dilemma (*i.e.*, there had to be a lie on at least one occasion), but quite properly on whether applicant's overall record of conduct "justifie[d] the trust of clients, adversaries, courts and others with respect to the professional duties owed to them." *See* Standards, *supra.*

With respect to her guilty plea, applicant makes two further arguments. She contends, first, that she should have been informed about the use of an *Alford* plea whereby she could have admitted the factual basis for the offense and then, though denying guilt, have been permitted to enter a plea of guilty. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *State of Iowa v. Reed,* 252 N.W.2d 455 (Iowa 1977) (following *Alford*). Applicant, however, did not call her attorney or the prosecutor as a witness, so, except for Ms. Brown's statement, there is no way of knowing whether an *Alford* plea was or was not discussed, nor, for that matter, whether the court would have accepted such a plea.

Applicant next argues that because she was found guilty of arson she should not now be put in the position of having to lie by admitting she was guilty when she knows she was not. She cites *In re Hiss,* 368 Mass. 447, 333 N.E.2d 429 (1975), where the Massachusetts court, in dealing with Alger Hiss' application for reinstatement to the bar, recognized the unfairness of placing an applicant in this dilemma. But that case is no help here. Hiss' conviction was based on a jury's verdict of guilty, not on a plea of guilty. In insisting on his innocence before the bar admission authorities, Hiss was not taking a position contrary to his prior testimony in court.

Applicant's petition for admission to the bar of this state is denied.

TOMLJANOVICH, J., took no part in the consideration or determination of this case.